IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRACEY YATSKO,** | : | No. 3:06cv2480 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| | : | |
| **v.** | : | |
| | : | |
| **JOSEPH BEREZWICK,** | : | |
| **ANDREA EDMONDS, and** | : | |
| **THE TAMAQUA AREA SCHOOL** | : | |
| **DISTRICT,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendants' motion to dismiss the plaintiff's complaint (Doc. 10). Having been fully briefed and argued, the case is ripe for disposition.

**Background**

Plaintiff was formerly a student at Tamaqua Area High School. (Complaint (Doc. 1) (hereinafter "Complt.") at ¶ 4). At the time of the events in question, Defendant Joseph Berezwick was the Head Basketball Coach at the School and an employee of the Defendant School District. (Id. at ¶¶ 5, 7). Defendant Andrea Edmonds was also a School District employee, as well as Assistant Basketball Coach. (Id. at ¶¶ 6, 7).

The incident that gave rise to the instant lawsuit began on January 10, 2005. (Id. at ¶ 9). At that time, plaintiff was a starting player on the Tamaqua High basketball team. (Id.). During the second quarter of a game on that date, plaintiff

leapt for a rebound. (Id. at ¶ 12). When she landed, the top of her head struck the top of another player's head. (Id.). The force of the collision immediately caused plaintiff visual problems and a painful headache. (Id. at ¶ 13). Because of a lopsided score, plaintiff did not play in the game after she hurt her head. (Id.). At the end of the game, plaintiff told Defendant Edmonds that she had hit her head, had a headache, and was in a great deal of pain. (Id. at ¶ 14). Edmonds then took plaintiff to her mother, who was watching the game, telling her that plaintiff had been "bumped around in the game." (Id. at ¶ 15). Edmonds did not take plaintiff to the trainer during the game because she did not want the trainer to say she could not play. (Id. at ¶ 16).

Following Defendant Edmonds's advice and her own knowledge of head injuries, plaintiff's mother woke plaintiff from her sleep every few hours that night to ensure her safety. (Id. at ¶ 17). Plaintiff attended school the next day, but had a painful headache all day. (Id. at ¶ 18). She could not concentrate, felt nauseated, and told several friends that she had suffered a concussion. (Id. at ¶ 19).

Plaintiff's symptoms continued into the next day, January 12, 2005. (Id. at ¶ 20). Her basketball team had a scheduled game against Pine Grove, Pennsylvania that day. (Id. at ¶ 21). Plaintiff cried on the bus to the game, telling teammates and others that she had suffered a concussion and felt terrible. (Id. at ¶ 22). During warmups for the game, she had difficulty participating, felt weak, and shook. (Id. at ¶ 23). Defendants Edmonds and Berezwick observed these problems. (Id.). Plaintiff

told her coaches that she had suffered a concussion in the previous game. (Id. at ¶¶ 24-25). Armed with this information, Defendants Berezwick and Edmonds set up a signal that made plaintiff responsible for telling coaches when she needed to leave the game. (Id. at ¶ 26). The coaches told her she was the team's tallest player and needed to remain in the game. (Id. at ¶ 27). Following the district's policy, no trainer was present at the game. (Id. at ¶ 28). Defendant Berezwick asked plaintiff several times during the game if she was okay. (Id. at ¶ 29). At the end of the game, plaintiff's nausea increased and she began to shake and feel unsteady. (Id. at ¶ 30). She collapsed to the ground in the locker room. (Id. at ¶ 31). The Pine Grove trainer gave her a chocolate bar, which she could not chew or swallow. (Id. at ¶ 32). Defendant Berezwick then asked plaintiff if he should call an ambulance for her. (Id. at ¶ 33). Instead, the two coaches help plaintiff board the bus back to school. (Id. at ¶ 34).

On the bus ride home, Defendant Berezwick asked plaintiff if the bus should stop at the hospital. (Id. at ¶ 35). Plaintiff replied that she wanted to see her mother. (Id. at ¶ 36). Defendant Edmonds met plaintiff's mother at a restaurant after the game and informed her that her daughter had collapsed. (Id. at ¶ 37). Plaintiff's mother asked Edmonds why her daughter had played, since she had been under the impression that the prior head injury would prevent that. (Id. at ¶ 38). Edmonds explained that she had spoken with the other coaches, and that plaintiff had expressed a desire to play. (Id. at ¶ 39). Defendant Berezwick then told plaintiff's

3

mother to take her to the hospital. (Id. at ¶ 40). At the hospital, defendant Berezwick told plaintiff's mother that her daughter had wanted to play, and that he "had made the wrong call" in not preventing it. (Id. at ¶ 41).

As a result of this improper medical treatment, plaintiff suffered serious brain injuries that caused "potentially permanent health problems." (Id. at ¶ 42). She has been unable to participate in sports, missed several months of high school and dropped out of college. (Id.). Plaintiff's health problems include "serious brain injuries, aggravation of cerebral concussion and permanent sequalae therefrom, blurred vision, loss of balance, headaches and depression." (Id. at ¶ 43). These injuries led to serious medical expenses, and will continue to do so. (Id. at ¶ 44).

On December 28, 2006 plaintiff filed the instant complaint (Doc. 1). Count I alleges that Defendants Berezwick and Edmonds failure to obtain proper treatment for plaintiff's head injury violated her constitutional right "to be free from state occasioned or created harm to her bodily integrity and health" pursuant to 42 U.S.C. § 1983. Count II alleges a Section 1983 violation against the School District. Plaintiff contended that she "possessed substantive and procedural rights including a liberty interest in her bodily integrity, freedom from state created dangers, and a right not to be harmed under the constitutions of the United States and the Commonwealth of Pennsylvania." The School District, plaintiff claimed, "affirmatively created a danger to students . . . when it allowed students participating in potentially dangerous sporting activities to be in the care, custody and control" of the individual

4

defendants. Plaintiff also alleged that the School District failed to established proper policies, procedures and training for personnel responsible for supervising athletes. Such policies amounted to "reckless indifference" to student-athlete's needs. Count III is a state-law negligence claim against all the defendants based on the defendants' failure to respond properly to plaintiff's condition on January 10, 2005. Count IV raises a state-law negligence claim against the school district related to the districts failure to provide proper training to prevent injuries to athletes like the plaintiff.

On April 12, 2007, defendants filed a motion to dismiss the complaint (Doc. 10). Both sides filed briefs and we heard argument, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. § 1983, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

The case is before this court in part on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. The issue is whether the facts

alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

**Discussion**

Defendants seek dismissal of plaintiff's complaint on several grounds. We will address each in turn, as appropriate.

### I. Violation of Plaintiff's Due Process Rights

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that "(1) . . . the conduct complained of was committed by a person acting under color of state law and (2) . . . [that] the conduct deprived the complainant of rights secured under the Constitution or federal law." Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1988). The parties apparently do not dispute that the individual defendants, coaches employed by the school district, were acting under color of state law. The question in this case, then, is whether defendants violated any of plaintiff's rights secured under the Constitution or federal law. Plaintiff alleges that defendants violated her Fourteenth Amendment right to substantive due process by failing to protect her bodily integrity or to keep her free from state-created dangers. (Complt. at ¶ 53). In her brief, plaintiff contends that defendants' actions in denying these rights amounted to behavior that "shocked the conscience" and gave rise to

6

her Fourteenth Amendment claims.

In a general sense, plaintiff claims that defendants' actions violated her constitutional right to substantive due process by violating her right to bodily integrity. See Ingraham v. Wright, 430 U.S. 651, 673-74 (1977). "'The touchstone of due process is the protection of the individual against arbitrary action of government.'" Miller v. City of Philadelphia, 174 F.3d 368, 374 (3d Cir. 1999) (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). Where the plaintiff alleges misconduct by a government official, "'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" Id. at 375 (quoting County of Sacramento v. Lewis, 523 U.S. 833 (1998)). "Executive action must be so ill-conceived or malicious that 'it shocks the conscience'" before liability can appear. Id. (quoting Lewis, 118 S. Ct. At 1717); see also, Fagan v. City of Vineland, 22 F.3d 1296, 1303 (3d Cir. 1994) (holding that "the substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that 'shocks the conscience.'"). This standard means that "officials will not be held liable for actions that are merely negligent." Id. The circumstances surrounding an official's actions are important to determining liability: "[a] much higher fault standard is proper when a government official is acting instantaneously and making pressured decisions without the aiblity to fully consider the risks. In such instances, liability will only be applied when a 'purpose to cause harm' is demonstrated." Id. If, "[h]owever, . . . a state actor has the time to act deliberately

7

and is not under pressure to make split-second decisions, gross negligence may be sufficient." Ye v. United States, 484 F.3d 634, 639 n.2 (3d Cir. 2007).

Plaintiff also alleges that defendants are liable for violating her substantive due process rights under a state-created danger theory. United States courts have recognized a constitutional right to be free from a "state-created danger," which occurs when "state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in absence of state intervention.'" Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006) (quoting Schieber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003)).  A state-created danger claim has four elements:

> (1) 'the harm ultimately caused was forseseeable and fairly direct;'
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff such that the 'the plaintiff was a foreseeable victim of the defendant's acts,' or a 'member of a discrete class of persons subjected to the potential harm brought about by the state's actions,' as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Id. (citations omitted).

In this case, the dispositive question for plaintiff's federal constitutional claims is whether any of the defendants engaged in behavior that "shocked the conscience." If plaintiff has properly alleged facts about the behavior of her coaches which would shock the conscience, she could prevail on her constitutional claims. If she has alleged no such behavior, she has not met one of the required elements of her constitutional claim, and granting defendants' motion to dismiss on those

8

constitutional claims would be appropriate.

In light of the facts and circumstances alleged by the plaintiff, all of her allegations sound in negligence. Plaintiff contends that her coaches had her under their care, knew she probably had a concussion and did not take forceful action to ensure that she received treatment. The coaches also did not prevent plaintiff from acting on her desire to play in a subsequent game, despite their knowledge of her continued physical maladies. She claims that this conduct caused her debilitating injuries. If a jury were to believe these allegations, defendants would be liable to plaintiff for negligence under Pennsylvania law, which would apply here to plaintiff's state law claims. See Farabaugh v. Pennsylvania Turnpike Cmmn., 911 A.2d 1264, 1273 (Pa. 2006) (holding that "[i]n any case sounding in negligence, a plaintiff must demonstrate: (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff."). Such actions, however, do not represent the sort of egregious official behavior that would shock the conscience and allow plaintiff to raise a constitutional claim. Plaintiff does not allege that her coaches used their authority to force her to play in the game, or that they refused her medical treatment. The Third Circuit Court of Appeals has stated frequently that behavior which is merely negligent does not shock the conscience. See Fagan, 22 F.3d at 1305 (finding that "[t]he Supreme Court has thus far held that mere negligence is insufficient to trigger constitutional liability."); Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992)

(holding that "[b]ecause the Due Process Clause 'does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society,' [citation omitted], we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law."); Miller, 174 F.3d at 375 (finding that "under this [shocks the conscience] standard, officials will not be held liable for actions that are merely negligent.").

Courts have found that students have a substantive due process right to be free from certain actions aimed at them by their teachers, such as sexual assault. See Stoneking v. Bradford Area School Dist., 882 F.2d , 727 (3d Cir. 1989). Here, however, the failures of the teachers were ones of omission; they did not prohibit plaintiff from playing in a basketball game after she injured herself. Such action, while inadvisable, does not constitute the sort of egregious behavior that rises to the level of a substantive due process violation.[1] See, e.g., Neal v. Fulton County Bd. of

---

[1] We recognize that another federal court addressing liability for injuries sustained in sporting events has recently concluded that a "deliberate indifference," and not a "shocks the conscience," standard should apply in state-created danger cases. See Sciotto ex. rel. Sciotto v. Newton School Dist., 81 Fed. Supp. 2d 559 (E.D. Pa. 1999); see also, Sciotto ex. rel. Sciotto v. Newtown School Dist., 1999 WL 79136, * 7 (E.D. Pa. February 9, 1999) (relying on Kneipp v. Tedder, 99 F.3d 1199, 1208 (3d Cir. 1996) for the proposition that "a 'deliberate indifference' standard had generally been employed by courts applying a state-created danger theory of liability."). Relying on that less exacting standard, the court found summary judgment inappropriate in a case where a wrestler suffered severe injuries after his coach sanctioned him wrestling in practice against an older, heavier and more skilled wrestler. Since more recent precedential cases in the Third Circuit have now adopted the "shocks the conscience" standard, we find the reasoning of that case inapposite to this one. See, e.g., Bright, 443 F.3d at 281; Mohammed v. Sch. Dist. of Philadelphia, 196 Fed. Appx. 79, 81 (3d Cir. 2006) (holding that to state a claim in a state-created danger due

10

Educ., 229 F.3d 1069, 1077 (11th Cir. 2000) (finding that plaintiff had stated a claim for substantive due process by alleging that a football coach had disciplined him by striking him in the head with a metal lock, knocking out his eye); Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 726 (6th Cir. 1996) (finding that a teacher and coach's single slap of one student and suggestive touching and "inappropriate" comments to another did not constitute conscience-shocking behavior). The conduct of the coaches in this case, where they failed to prevent a student from exercising her desire to play in a game, does not equal that of a coach striking a player with a weapon and causing grave injury. An ill-advised decision to allow a player to participate does not shock the conscience.

Plaintiff has therefore not stated a Fourteenth Amendment Due Process claim, and we are forced to dismiss her federal constitutional claims. The facts alleged by the plaintiff resulted in a tragic outcome; we cannot, however, find a constitutional violation in conduct by a state actor that, as alleged, rises only to the level of negligence. Before dismissing this case, however, we will grant the plaintiff leave to file an amended complaint that properly sets forth a constitutional due process claim. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (holding that if a complaint is subject to Rule 12(b)(6) dismissal, we must permit a curative amendment unless such an amendment would be inequitable or futile). We will, therefore, grant the

---

process case a plaintiff must show that "a state actor . . . acted with a degree of culpability that shocks the conscience.").

11

plaintiff twenty (20) days to file an amended complaint which properly pleads her constitutional due process claim.

**Claims against the school district**

Plaintiff also raises claims against the school district. Under Section 1983 *respondeat superior* liability is unavailable, and torts committed by employees do not make a municipality liable: "a local governing body can be held liable only for an official policy or custom." San Filipo v. Bongiovanni, 30 F. 3d 424, 445 (3d Cir. 1994). Under the standard first articulated in Monell v. Dept. of Social Services, "local governing bodies . . . can be sued directly under §1983 . . . where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 690 (1978). Liability exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989). Here, because we have not found that plaintiff has properly raised a claim that she suffered a violation of her constitutional rights, we cannot find that any municipal policy or custom led to such a violation. Accordingly, we will dismiss the case against the school board as well.

**State law claims**

Because we have dismissed all of plaintiff's federal claims, we lack jurisdiction

to hear any of her state-law claims.  See  United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).  We are a court of limited jurisdiction, and we will therefore dismiss those claims.

**Conclusion**

Because plaintiff has not alleged any facts which, if proved, would entitle her to relief, we will grant the defendants' motion to dismiss her claims without prejudice.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRACEY YATSKO,** | : | No. 3:06cv2480 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| **v.** | : | |
| **JOSEPH BEREZWICK,** | : | |
| **ANDREA EDMONDS, and** | : | |
| **THE TAMAQUA AREA SCHOOL** | : | |
| **DISTRICT,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 4th day of December 2007, the defendants' motion to dismiss plaintiff's claim (Doc. 10) is hereby **GRANTED** to the extent that this case will be dismissed in twenty (20) days if the plaintiff fails to file an amended complaint that properly pleads a constitutional due process claim.

        **BY THE COURT:**

        **s/ James M. Munley**
        **JUDGE JAMES M. MUNLEY**
        **United States District Court**