## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRACEY YATSKO, | : | No. 3:06cv2480 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| JOSEPH BEREZWICK, | : | |
| ANDREA EDMONDS, and | : | |
| THE TAMAQUA AREA SCHOOL | : | |
| DISTRICT, | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court is defendants' motion to dismiss the plaintiff's amended complaint (Doc. 25).  Having been fully briefed and argued, the case is ripe for disposition.

**Background**

Plaintiff was formerly a student at Tamaqua Area High School.  (Amended Complaint (Doc. 24) (hereinafter "Amended Complt.") at ¶ 4).  At the time of the events in question, Defendant Joseph Berezwick was the Head Basketball Coach at the School and an employee of the Defendant School District.  (Id. at ¶ 5). Defendant Andrea Edmonds was also a School District employee, as well as Assistant Basketball Coach.  (Id. at ¶ 6).

The incident that gave rise to the instant lawsuit began on January 10, 2005.  (Id. at ¶ 9).  At that time, plaintiff was a starting player on the Tamaqua High

basketball team.  (Id.).  During the second quarter of a game on that date, plaintiff leapt for a rebound.  (Id. at ¶ 12).  When she landed, the top of her head struck the top of another player's head.  (Id.).  The force of the collision immediately caused plaintiff visual problems and a painful headache.  (Id. at ¶ 13).  Because of a lopsided score, plaintiff did not play in the game after she hurt her head.  (Id.).  At the end of the game, plaintiff told Defendant Edmonds that she had hit her head, had a headache, and was in a great deal of pain.  (Id. at ¶ 14).  Edmonds then took plaintiff to her mother, who was watching the game, telling her that plaintiff had been "bumped around in the game."  (Id. at ¶ 15).  Edmonds did not take plaintiff to the trainer during the game because she did not want the trainer to say she could not play.  (Id. at ¶ 16).

Following Defendant Edmonds's advice and her own knowledge of head injuries, plaintiff's mother woke plaintiff from her sleep every few hours that night to ensure her safety.  (Id. at ¶ 17).  Plaintiff attended school the next day, but had a painful headache all day.  (Id. at ¶ 18).  She could not concentrate, felt nauseated, and told several friends that she had suffered a concussion.  (Id. at ¶ 19).

Plaintiff's symptoms continued into the next day, January 12, 2005.  (Id. at ¶ 20).  Her basketball team had a scheduled game against Pine Grove, Pennsylvania that day.  (Id. at ¶ 21).  Plaintiff cried on the bus to the game, telling teammates and others that she had suffered a concussion and felt terrible.  (Id. at ¶ 22).  During warmups for the game, she had difficulty participating, felt weak, and shook.  (Id. at ¶

2

23).  Defendants Edmonds and Berezwick observed these problems.  (Id.).  Plaintiff

told her coaches that she had suffered a concussion in the previous game.  (Id. at ¶¶

24-25).  Armed with this information, Defendants Berezwick and Edmonds set up a

signal that made plaintiff responsible for telling coaches when she needed to leave

the game.  (Id. at ¶ 26).  The coaches told her she was the team's tallest player and

needed to remain in the game.  (Id. at ¶ 27).  Plaintiff alleges that this

encouragement amounted to the "legal and moral equivalent of pressuring, goading

and coercing the Plaintiff, a student, to play the game after a serious head injury."

(Id. at ¶ 28).  Following the district's policy, no trainer was present at the game.  (Id.

at ¶ 29).  Defendant Berezwick asked plaintiff several times during the game if she

was okay.  (Id. at ¶ 30).  At the end of the game, plaintiff's nausea increased and she

began to shake and feel unsteady.  (Id. at ¶ 31).  She collapsed to the ground in the

locker room.  (Id. at ¶ 32).  The Pine Grove trainer gave her a chocolate bar, which

she could not chew or swallow.  (Id. at ¶ 33).  Defendant Berezwick then asked

plaintiff if he should call an ambulance for her.  (Id. at ¶ 34).  Instead, the two

coaches help plaintiff board the bus back to school.  (Id. at ¶ 35).

On the bus ride home, Defendant Berezwick asked plaintiff if the bus should

stop at the hospital.  (Id. at ¶ 36).  Plaintiff replied that she wanted to see her mother.

(Id. at ¶ 37).  Defendant Edmonds met plaintiff's mother at a restaurant after the

game and informed her that her daughter had collapsed.  (Id. at ¶ 38).  Plaintiff's

mother asked Edmonds why her daughter had played, since she had been under the

impression that the prior head injury would prevent that.  (Id. at ¶ 39).  Edmonds

explained that she had spoken with the other coaches, and that plaintiff had

expressed a desire to play.  (Id. at ¶ 40).  Defendant Berezwick then told plaintiff's

mother to take her to the hospital.  (Id. at ¶ 41).  At the hospital, defendant

Berezwick told plaintiff's mother that her daughter had wanted to play, and that he

"had made the wrong call" in not preventing it.   (Id. at ¶ 42).

Plaintiff alleges that the Defendant School District and its coaches are

members of the Pennsylvania Interscholastic Athletic Association (PIAA) and bound

by the Association's rules and regulations.  (Id. at ¶ 43).  These rules are laid out in

the PIAA Handbook.  (Id. at ¶ 44).  The PIAA Constitution and By-Laws establish

that the Association aims to "'organize, develop, and direct an interscholastic athletic

program which will promote, protect, and conserve the health and physical welfare of

all participants.'" (Id. at ¶ 45).  Those rules require that a school exclude any athlete

who has suffered a serious injury from competition until a doctor pronounces her

physically fit.  (Id. at ¶ 46).  The by-laws also declare that, for coaches, "'striving to

win at any cost is distinctly unethical.'" (Id. at ¶ 47).  When discussing "contact

sports," the rules warn of potential "heightened exposure to communicable diseases,

illnesses, and injuries" but declare that such risks "can be minimized through proper

coaching, training, and supervision."  (Id. at ¶ 48).  In discussing head injuries, the

handbook's section on sports medicine advises coaches not to allow athletes who

have suffered concussions to return to play until they have fully recovered from their

4

injuries and a doctor has provided permission.  (Id. at ¶¶ 50-51).  Plaintiff alleges

that though defendants were required to comply with these rules, they failed to do

so.  (Id. at ¶ 52).

As a result of this improper medical treatment, plaintiff suffered serious brain

injuries that caused "potentially permanent health problems."  (Id. at ¶ 54).  She has

been unable to participate in sports, missed several months of high school and

dropped out of college.  (Id.).  Plaintiff's health problems include "serious brain

injuries, aggravation of cerebral concussion and permanent sequalae therefrom,

blurred vision, loss of balance, headaches and depression."  (Id. at ¶ 55).  These

injuries led to serious medical expenses, and will continue to do so.  (Id. at ¶ 56).

On December 28, 2006 plaintiff filed her initial complaint (Doc. 1).  Defendants

filed a motion to dismiss that complaint for failure to state a claim upon which relief

could be granted.  (See Doc. 10).  After the court heard argument on the matter, on

December 4, 2007 we issued an opinion that granted the motion but gave plaintiff

leave to amend the complaint.  To survive scrutiny, plaintiff would have to file a

complaint that alleged that the defendant's behavior shocked the conscience.

Plaintiff filed an amended complaint on December 20, 2007.  Two of her

causes of action cite 42 U.S.C. § 1983.  Count I raises a claim against Edmonds and

Berezwick for a violation of plaintiff's substantive and procedural due process rights.

Plaintiff contends that she had a liberty interest in bodily injury and freedom from

state-created danger, as well as a right not to be harmed.  She also contends she

had a right to adequate medical treatment. Defendant's failure to provide medical care and encouragement of plaintiff to play in a basketball game constituted deliberate indifference to the plaintiff's health.  Count II raises a claim against the school district; plaintiff contends that the school district created a danger to students by allowing them to be supervised by Berezwick and Edmonds in dangerous activities, and by failing to institute and enforce safety standards in interscholastic athletics.  Such action amounted to a practice, policy or custom of reckless indifference to plaintiff's rights.  Count III raises a negligence claim against all the defendants based on the actions of the coaches.  Count IV raises a negligence claim against the school district based on improper hiring and supervision of the coaches.

On January 7, 2008 defendants filed the instant motion to dismiss.  The parties filed briefs.  The court then held oral argument, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. § 1983, we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

The case is before this court in part on a motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6).  When a 12(b)(6) motion is filed, the

sufficiency of a complaint's allegations are tested.  The issue is whether the facts

alleged in the complaint, if true, support a claim upon which relief can be granted.  In

deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the

complaint and give the pleader the benefit of all reasonable inferences that can fairly

be drawn therefrom, and view them in the light most favorable to the plaintiff.  Morse

v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

**Discussion**

### I. Violation of Plaintiff's Due Process Rights

The court's original decision found that:

> To state a claim under 42 U.S.C. § 1983, a plaintiff must allege
> that "(1) . . . the conduct complained of was committed by a person
> acting under color of state law and (2) . . . [that] the conduct deprived
> the complainant of rights secured under the Constitution or federal law."
> Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1988).
> The parties apparently do not dispute that the individual defendants,
> coaches employed by the school district, were acting under color of
> state law.  The question in this case, then, is whether defendants
> violated any of plaintiff's rights secured under the Constitution or federal
> law.  Plaintiff alleges that defendants violated her Fourteenth
> Amendment right to substantive due process by failing to protect her
> bodily integrity or to keep her free from state-created dangers.  (Complt.
> at ¶ 53).   In her brief, plaintiff contends that defendants' actions in
> denying these rights amounted to behavior that "shocked the
> conscience" and gave rise to her Fourteenth Amendment claims.
> In a general sense, plaintiff claims that defendants' actions
> violated  her constitutional right to substantive due process by violating
> her right to bodily integrity.  See Ingraham v. Wright, 430 U.S. 651, 673-
> 74 (1977).  "'The touchstone of due process is the protection of the
> individual against arbitrary action of government.'" Miller v. City of
> Philadelphia, 174 F.3d 368, 374 (3d Cir. 1999) (quoting Wolff v.

McDonnell, 418 U.S. 539, 558 (1974)).  Where the plaintiff alleges misconduct by a government official, "'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" Id. at 375 (quoting County of Sacramento v. Lewis, 523 U.S. 833 (1998)). "Executive action must be so ill-conceived or malicious that 'it shocks the conscience'" before liability can appear.  Id. (quoting Lewis, 118 S. Ct. At 1717); see also, Fagan v. City of Vineland, 22 F.3d 1296, 1303 (3d Cir. 1994) (holding that "the substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that 'shocks the conscience.'").  This standard means that "officials will not be held liable for actions that are merely negligent."  Id.   The circumstances surrounding an official's actions are important to determining liability: "[a] much higher fault standard is proper when a government official is acting instantaneously and making pressured decisions without the aiblity to fully consider the risks.  In such instances, liability will only be applied when a 'purpose to cause harm' is demonstrated."  Id.  If, "[h]owever, . . . a state actor has the time to act deliberately and is not under pressure to make split-second decisions, gross negligence may be sufficient." Ye v. United States, 484 F.3d 634, 639 n.2 (3d Cir. 2007).

Plaintiff also alleges that defendants are liable for violating her substantive due process rights under a state-created danger theory. United States courts have recognized a constitutional right to be free from a "state-created danger," which occurs when "state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in absence of state intervention.'" Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006) (quoting Schieber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003)).  A state-created danger claim has four elements:
(1) 'the harm ultimately caused was forseeeable and fairly direct;'
(2) a state actor acted with a degree of culpability that shocks the conscience;
(3) a relationship between the state and the plaintiff such that the 'the plaintiff was a foreseeable victim of the defendant's acts,' or a 'member of a discrete class of persons subjected to the potential harm brought about by the state's actions,' as opposed to a member of the public in general; and
(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Id. (citations omitted).

In this case, the dispositive question for plaintiff's federal constitutional claims is whether any of the defendants engaged in behavior that "shocked the conscience."  If plaintiff has properly alleged facts about the behavior of her coaches which would shock the conscience, she could prevail on her constitutional claims.  If she has alleged no such behavior, she has not met one of the required elements of her constitutional claim, and granting defendants' motion to dismiss on those constitutional claims would be appropriate.

In light of the facts and circumstances alleged by the plaintiff, all of her allegations sound in negligence.  Plaintiff contends that her coaches had her under their care, knew she probably had a concussion and did not take forceful action to ensure that she received treatment.  The coaches also did not prevent plaintiff from acting on her desire to play in a subsequent game, despite their knowledge of her continued physical maladies.  She claims that this conduct caused her debilitating injuries.  If a jury were to believe these allegations, defendants would be liable to plaintiff for negligence under Pennsylvania law, which would apply here to plaintiff's state law claims.  See Farabaugh v. Pennsylvania Turnpike Cmmn., 911 A.2d 1264, 1273 (Pa. 2006) (holding that "[i]n any case sounding in negligence, a plaintiff must demonstrate: (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff.").  Such actions, however, do not represent the sort of egregious official behavior that would shock the conscience and allow plaintiff to raise a constitutional claim.  Plaintiff does not allege that her coaches used their authority to force her to play in the game, or that they refused her medical treatment.  The Third Circuit Court of Appeals has stated frequently that behavior which is merely negligent does not shock the conscience.  See Fagan, 22 F.3d at 1305 (finding that "[t]he Supreme Court has thus far held that mere negligence is insufficient to trigger constitutional liability."); Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992) (holding that "[b]ecause the Due Process Clause 'does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society,' [citation omitted], we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law."); Miller, 174 F.3d at 375 (finding that "under this [shocks the conscience] standard, officials will not be held liable for actions that are merely negligent.").

Courts have found that students have a substantive due process

9

right to be free from certain actions aimed at them by their teachers, such as sexual assault.  See Stoneking v. Bradford Area School Dist., 882 F.2d , 727 (3d Cir. 1989).  Here, however, the failures of the teachers were ones of omission; they did not prohibit plaintiff from playing in a basketball game after she injured herself.  Such action, while inadvisable, does not constitute the sort of egregious behavior that rises to the level of a substantive due process violation.[1]  See, e.g., Neal v. Fulton County Bd. of Educ., 229 F.3d 1069, 1077 (11th Cir. 2000) (finding that plaintiff had stated a claim for substantive due process by alleging that a football coach had disciplined him by striking him in the head with a metal lock, knocking out his eye); Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 726 (6th Cir. 1996) (finding that a teacher and coach's single slap of one student and suggestive touching and "inappropriate" comments to another did not constitute conscience-shocking behavior).  The conduct of the coaches in this case, where they failed to prevent a student from exercising her desire to play in a game, does not equal that of a coach striking a player with a weapon and causing grave injury.  An ill-advised decision to allow a player to participate does not shock the conscience.

Plaintiff has therefore not stated a Fourteenth Amendment Due Process claim, and we are forced to dismiss her federal constitutional claims.  The facts alleged by the plaintiff resulted in a tragic outcome; we cannot, however, find a constitutional violation in conduct by a state actor that, as alleged, rises only to the level of negligence.  Before dismissing this case, however, we will grant the plaintiff leave to file an

---

[1]We recognize that another federal court addressing liability for injuries sustained in sporting events has recently concluded that a "deliberate indifference," and not a "shocks the conscience," standard should apply in state-created danger cases.  See Sciotto ex. rel. Sciotto v. Newton School Dist., 81 Fed. Supp. 2d 559 (E.D. Pa. 1999); see also, Sciotto ex. rel. Sciotto v. Newtown School Dist., 1999 WL 79136, * 7 (E.D. Pa. February 9, 1999) (relying on Kneipp v. Tedder, 99 F.3d 1199, 1208 (3d Cir. 1996) for the proposition that "a 'deliberate indifference' standard had generally been employed by courts applying a state-created danger theory of liability.").  Relying on that less exacting standard, the court found summary judgment inappropriate in a case where a wrestler suffered severe injuries after his coach sanctioned him wrestling in practice against an older, heavier and more skilled wrestler.  Since more recent precedential cases in the Third Circuit have now adopted the "shocks the conscience" standard, we find the reasoning of that case inapposite to this one.  See, e.g., Bright, 443 F.3d at 281; Mohammed v. Sch. Dist. of Philadelphia, 196 Fed. Appx. 79, 81 (3d Cir. 2006) (holding that to state a claim in a state-created danger due process case a plaintiff must show that "a state actor . . . acted with a degree of culpability that shocks the conscience.").

amended complaint that properly sets forth a constitutional due process
claim.  See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (holding
that if a complaint is subject to Rule 12(b)(6) dismissal, we must permit
a curative amendment unless such an amendment would be inequitable
or futile).  We will, therefore, grant the plaintiff twenty (20) days to file an
amended complaint which properly pleads her constitutional due
process claim.

(Memorandum (Doc. 23) at 6-11).

The court thus dismissed the plaintiff's complaint, but provided an opportunity

to file an amended complaint that alleged behavior that shocked the conscience.

Plaintiff filed a complaint intended to address this failing.  We find that it does not.

The amended complaint adds allegations about the rules and by-laws of the PIAA

and the failure of the district and plaintiff's coaches to follow the guidelines

established in those documents.  The complaint adds only one additional allegation,

a statement about the behavior of plaintiff's coaches in encouraging her to play in

the game after she injured her head.  This conclusory allegation alleges that  "These

statements by the coach, who was the adult responsible for the minor Plaintiff's care

and custody at away games, was the functional, legal and moral equivalent of

pressuring, goading and coercing the Plaintiff, a student, to play the game after a

serious head injury."  (Amended Complt. at ¶ 28).  Plaintiff has therefore offered not

a new allegation, but legal argument about the meaning of the previous allegations.

She has not amended her complaint to allege conscience-shocking behavior, and

the complaint still sounds in negligence.   Even if defendants improperly encouraged

plaintiff to play by appealing to her commitment to the team or desire to be viewed

as a strong young athlete, such encouragement is in the run of normal coaching

11

methods and not the behavior that would shock the conscience.  Similarly, the alleged failure of coaches to follow specific PIAA regulations would at best constitute negligence per se.   Since the court has dismissed all federal claims in the case, we lack jurisdiction to hear the state claims.  See  United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).  Because we gave plaintiff the opportunity to amend her complaint and she remained unable to state a claim, we will dismiss this complaint with prejudice.

The court recognizes that the circumstances that gave rise to this case are tragic.  The plaintiff suffered a terrible injury and seeks compensation for the losses she has suffered.  Unfortunately, this is a court of limited jurisdiction, and we cannot hear claims–no matter how worthy they may turn out to be–unless they arise under the laws or Constitution of the United States.  Plaintiff has not stated such a claim, and the relief her experience deserves does not lie with this court.  Plaintiff's remedy, therefore, must be found in any claims she may bring in the courts of Pennsylvania. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRACEY YATSKO, | : | No. 3:06cv2480 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| JOSEPH BEREZWICK, | : | |
| ANDREA EDMONDS, and | : | |
| THE TAMAQUA AREA SCHOOL | : | |
| DISTRICT, | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 13th day of June 2008, the defendants' motion

to dismiss plaintiff's claim (Doc. 25) is hereby **GRANTED**.  The Clerk of Court is

directed to **CLOSE** the case.


                                          **BY THE COURT:**


                                          **s/ James M. Munley**
                                          **JUDGE JAMES M. MUNLEY**
                                          **United States District Court**